NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CARMEN VEGA, | : |
| | : |
| Plaintiff, | : Civ. No. 07-2975 (AET) |
| | : |
| v. | : |
| | : **MEMORANDUM & ORDER** |
| MICHAEL J. ASTRUE, | : |
| COMMISSIONER OF SOCIAL | : |
| SECURITY, | : |
| | : |
| Defendant. | : |

THOMPSON, U.S.D.J.

    This matter is before the Court on Plaintiff Carmen Vega's appeal of a final administrative decision by Defendant Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction to decide this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the decision of the Commissioner is affirmed.

BACKGROUND

    Plaintiff is a forty-four-year-old high school graduate with some vocational training in health science technology. (R. 259.)[1] Plaintiff is unmarried and lives with her three children, one of whom is a minor. (R. 61-62, 268.) Her past work experience includes employment as a waitress, aircraft assembly worker, billing clerk, and hospital registration clerk. (R. 16.) On June

---

[1] Page citations are to the administrative record filed by the Commissioner.

18, 2004, Plaintiff filed applications for DIB and SSI benefits alleging an inability to work due to Grave's disease. (R. 61-64, 241-43.) The Commissioner denied the claim both initially and on reconsideration. (R. 25-36, 244-49.) Plaintiff then obtained a hearing before an Administrative Law Judge ("ALJ") on August 11, 2006. (R. 251-92.)

At the hearing, Plaintiff testified that she was diagnosed with Grave's disease in September 2003 and stopped working entirely in February 2004 due to symptoms including shortness of breath, hand tremors, blurred vision, irritability, inability to focus, depression, and pain in her bones and joints. (R. 257, 265-66.) Plaintiff also testified that, during the time for which she is seeking benefits, she experienced difficulty sleeping, bad dreams, paranoia, fatigue, rapid and irregular heartbeat, and sensitivity to heat and cold. (R. 267-72.) Plaintiff lost approximately forty pounds over three months around the time of her diagnosis, but noted that some of that weight loss could have been the reversal of water retention caused by her treatment in the hospital. (R. 272-73.) Plaintiff has been prescribed several medications for her Grave's disease, high blood pressure, inability to sleep, and depression during the period of her disability. (R. 118, 124.) Plaintiff was hospitalized in October-November 2004, diagnosed with atrial fibrillations, and prescribed Coumadin. (R. 17, 213-15.) As part of her treatment, Plaintiff has her blood tested weekly to monitor her Coumadin level. (R. 277-78.)

Plaintiff's claim stated that her daily activities were limited to cooking, some house cleaning, and going outside to smoke. (R. 80.) Two weeks prior to the administrative hearing, Plaintiff began part-time work in a clerical position in order to retain her welfare benefits. (R. 280.) At the hearing, Plaintiff testified that she had already missed two days of work due to her disease, and that carrying out this part-time clerical work was difficult due to her pain, blurred

vision, and bowel and urination problems resulting from her disease and her medications. (R. 280-82). Plaintiff testified that she could not do clerical work for eight hours a day, and that she had difficulty lifting, walking, standing, and sitting. (R. 282, 284-85.)

A vocational expert also testified at the hearing as to the Plaintiff's vocational profile. (R. 288-89.) He stated that Plaintiff's former work as an aircraft assembly worker was skilled work with medium physical demands, and that her clerical work was classified as semi-skilled sedentary work. (R. 289.)

Following the hearing, the ALJ found that (1) Plaintiff was insured for DBI and SSI benefits; (2) Plaintiff had not engaged in substantial gainful activity since February 2004; (3) Plaintiff's impairment due to Grave's disease with enlargement of the thyroid and marked hypervascularity was "severe"; but (4) Plaintiff's impairment was not medically equal to one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 of the Social Security Act ("the Listings"); (5) Plaintiff's allegations regarding her limitations were "not totally credible"; (6) Plaintiff had the residual functional capacity ("RFC") to perform sedentary work; (7) Plaintiff's past relevant work ("PRW") as a billing clerk and hospital admissions clerk did not require the performance of work-related activity precluded by her RFC; (8) Plaintiff's medical impairments did not prevent her from performing her past work as a clerk; and therefore (9) Plaintiff was not "disabled" as defined in the Social Security Act at any time through October 2006, the date of the decision. (R. 20-21.)

Plaintiff's request for review of the ALJ's decision was denied by the Office of Hearings and Appeals. (R. 3-5.) Plaintiff then filed the instant action.

DISCUSSION

A.   Standard of Review

A reviewing court must affirm the ALJ's decision where it is based on correct legal standards and its factual findings are supported by substantial evidence in the record. 42 U.S.C. §§ 405(g), 1383(c)(3); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008) (citation omitted).

B.   Standard for Disability Benefits Under the Social Security Act

The Social Security Administration employs a five-step process to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner must determine whether the claimant has engaged in substantial gainful activity since his alleged disability onset date. Id. §§ 404.1520(b), 416.920(b). If not, the Commissioner next determines whether the claimant has an impairment or combination of impairments that is severe. Id. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner considers whether the impairment meets the criteria of an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P (the "Listings") or is equal to a listed impairment. If so, the claimant is automatically eligible for benefits; if not, the Commissioner proceeds to step four. Id. §§ 404.1520(d), 416.920(d). In step four, the Commissioner determines whether, despite the severe impairment, the claimant retains the residual functional capacity to perform his past relevant work. Id. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the ultimate burden of establishing steps one through four. At step five, the burden of proof shifts to the Social Security

Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. Poulos v. Commissioner of Social Security, 474 F.3d 88, 91-92 (3d Cir. 2007) (internal citations omitted).

C.      Commissioner's Disability Determination

Following this five-step procedure, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of February 2004. (R. 20.) Second, the ALJ concluded that Plaintiff had a "severe" impairment, namely Grave's disease with enlargement of the thyroid and marked hypervascularity. (R. 20.) Third, the ALJ found that Plaintiff's impairment was not the equivalent of any impairment in the Listings. (R. 20.) Fourth, the ALJ determined that Plaintiff had the RFC to perform sedentary work, including her PRW as an office and registration clerk. (R. 20-21.) Since the ALJ determined at step four that Plaintiff was not disabled as defined by the Social Security Act, it was unnecessary to reach the fifth step.

D.      Analysis of the Commissioner's Disability Determination

On appeal, Plaintiff asserts generally that the ALJ erred by misstating the disability standard. With regard to the ALJ's fourth step finding that Plaintiff's RFC allowed her to perform her PRW as a clerk, Plaintiff asserts the following specific errors: (1) the ALJ's treatment of Plaintiff's failure to follow prescribed treatment was factually unsupported and legally improper; (2) the ALJ's analysis of Plaintiff's credibility was factually unsupported and legally improper; (3) the ALJ improperly disregarded Plaintiff's subjective symptoms in the RFC analysis; and (4) the ALJ's RFC and PRW analyses were unsupported by factual findings as to Plaintiff's symptoms or as to the actual demands of Plaintiff's past jobs. Plaintiff contends that, since the ALJ improperly

found that Plaintiff's RFC allowed her to preform her PRW, the ALJ should have performed the fifth step of the disability analysis. Given these asserted errors, Plaintiff requests that this court either reverse the ALJ's decision and award benefits or remand for a new hearing.

  1.  The ALJ's Statement of the Legal Standard for Disability

Plaintiff contends that the ALJ misstated the standard for evaluating disability under the Social Security Act by defining "disability" as limitations that "preclude all work activity" instead of limitations that preclude "substantial gainful (work) activity." (Pl.'s Br. 8.) Plaintiff notes that an adjudicator must assess "the individual's maximum remaining ability to do sustained work activities . . . on a regular and continuing basis . . . . A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." (Pl.'s Br. 11, citing SSR 96-8p; Kangas v. Bowen, 823 F.2d 775, 778 (3d Cir. 1987)).

The ALJ's use of the phrase "all work activity" in his opinion is not an error requiring reversal. As discussed in detail below, the ALJ made specific findings as to Plaintiff's RFC and the demands of her PRW as a clerk, and concluded that her RFC allowed her to perform some of her PRW. Given that the ALJ employed the proper five-step procedure in performing his disability analysis, the Court proceeds to review the ALJ's application of the procedure to Plaintiff's case.

  2.  The ALJ's Determination of Plaintiff's RFC and PRW

    i.  The ALJ's Determination Regarding Plaintiff's Noncompliance

In support of his findings at step four, the ALJ found that Plaintiff failed to follow treatment prescribed by her physicians. (R. 19.) Plaintiff argues that this finding amounted to a denial of benefits pursuant to 20 C.F.R. §§ 404.1530 and 416.930 for failure to follow prescribed

treatment, that such a denial must follow the procedure laid out in SSR 82-59 for denial of benefits for failure to follow treatment, and that the ALJ failed to follow this procedure. (Pl.'s Br. 15-19.) Plaintiff also argues that the finding of noncompliance was unsupported by the record. (Pl.'s Br. 15.) The Commissioner responds that the ALJ's finding of noncompliance was supported by the record and was properly considered as part of the ALJ's credibility analysis, not as an independent basis for denial of benefits. (Def.'s Br. 10-13.)

First, this Court finds that the ALJ's factual finding of Plaintiff's noncompliance is substantially supported by the record. The August 19, 2004 report of New Jersey Division of Disability Determination Services ("DDS") physician Dr. Gregory Braslavsky notes that Plaintiff had "poor response to treatment due to poor compliance." (R. 141-43.) The October 24, 2004 notes of Monmouth Medical Center ("MMC") physician Dr. Rehr, made upon Plaintiff's admission to the hospital, state, "The patient has been noncompliant with her medications." (R. 216.) MMC consultant Sara Wallach's report of November 1, 2004, states she was "Asked to eval [sic] this non compliant [female]." (R. 223.) Plaintiff's November 5, 2004, discharge summary completed by MMC physician Dr. Assad Ahmed states Plaintiff had a "history of past noncompliance." (R. 214.) Dr. Ahmed's progress note of November 8, 2004, following her discharge, states that Plaintiff "missed one dose of PTU" and "was instructed to take her meds in time, to avoid consequences of missing." (R. 168.) At the hearing, when asked by the ALJ about her past noncompliance, Plaintiff admitted she had stopped taking her medication on previous occasions.[2] The foregoing statements by numerous healthcare providers, along with Plaintiff's

---

[2] Plaintiff testified, "I'm going to be very honest with you, I don't know if it's the depression part . . . I tend to forget things very easily . . . . When he first diagnosed me with, with

own testimony, sufficiently support the ALJ's finding of noncompliance.

Second, this Court finds that the ALJ's denial of benefits was not pursuant to 20 C.F.R. §§ 404.1530 and 416.930 for failure to follow treatment prescribed by her physicians, and therefore the ALJ was not required to follow the procedure described in SSR 82-59. While the ALJ's opinion does note that benefits may be denied for a failure to follow prescribed treatment, and makes the factual finding that Plaintiff was noncompliant at points during the time for which she seeks benefits (R. 19-20), the ALJ's enumerated findings at the conclusion of the Opinion do not include any mention of this failure to comply. (R. 20-21.) Instead, the ALJ's factual finding regarding noncompliance supports his decision that Plaintiff's allegations regarding her limitations were not credible. (See R. 20.) In making a credibility determination as part of the evaluation of a claimant's symptoms, an adjudicator may consider the claimant less credible "if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p. Here, the ALJ's description of Plaintiff's noncompliance properly supports his finding regarding Plaintiff's credibility. Further, under SSR 82-59, the ALJ "may make a determination that an individual has failed to follow prescribed treatment [and therefore deny benefits] only where ... [t]he evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity." Clearly, given the ALJ's final finding that Plaintiff was capable of performing her past relevant work, he did not find

---

the thyroid, I mean, he didn't like sit there and explain to me the severity or how severe it can get. And you know, so I'm, I have a problem taking medication. I don't like taking medication. So I started to take it, depression was kicking in. I'll stop taking it. I wasn't taking it very seriously. . . . I take, I take it, but I started some new medication from the psychiatrist as well, so a lot of it, you know, trying to get used to it." (R. 275-76.)

that Plaintiff's impairment precluded her from engaging in any substantial gainful activity.

Therefore, the ALJ's decision was not based on 20 C.F.R. §§ 404.1530 and 416.930 and there was no need to follow SSR 82-59.

        ii.      <u>The ALJ's Evaluation of Plaintiff's Credibility</u>

In making his findings regarding Plaintiff's RFC, the ALJ wrote that he "carefully considered the claimant's testimony and [found] that her testimony is not credible to the extent alleged." (R. 19.) Plaintiff contends the ALJ's assessment of her credibility was erroneous because the ALJ's reasons for discounting her description of her limitations were inadequate and were not supported by substantial evidence. (Pl.'s Br. 23.) The Commissioner responds that the ALJ's credibility determination was properly made based on consideration of Plaintiff's testimony and documentary evidence. (Def.'s Br. 11-13.)

An adjudicator's credibility finding "must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p. The ALJ explained that he found Plaintiff's statements concerning her impairments

> were not credible in light of the degree of medical treatment obtained; the reports of the treating and examining practitioners; the medical history; the findings made on examination; the claimant's own assertions concerning her ability to work. There is no indication from the claimant's treating physician's [sic] that her limitations would preclude all work activity.

(R. 19.) Assessment of the credibility of an individual's statements about symptoms and about the effect of these symptoms on her ability to function must be based on a consideration of all evidence, including medical signs and laboratory findings, medical opinions provided by physicians or psychologists, and statements from the individual and from treating physicians. SSR 96-7p. Here, the ALJ drew his credibility findings from appropriate sources, such as comparing

Plaintiff's hearing testimony with the report of Plaintiff's treating physician Dr. Braslavsky and with Plaintiff's hospital records from MMC. (R. 19.) The ALJ found that, for example, Plaintiff's testimony that she was unable to sit for prolonged periods due to back pain was not supported by the medical evidence in the record and conflicted with Plaintiff's own testimony that she was able to work part-time at her welfare-mandated job. (R. 19.) The ALJ's stated reasons are sufficient to support his findings with regard to Plaintiff's subjective testimony.

### iii.    The ALJ's Consideration of Plaintiff's Subjective Symptoms

Plaintiff contends that the ALJ committed legal error by not including a detailed account of Plaintiff's daily chronic symptoms in his RFC finding. (Pl.'s Br. 22.) The Commissioner responds that the ALJ properly considered Plaintiff's subjective symptoms in light of the medical evidence and found that the evidence did not support Plaintiff's subjective symptomatology to the disabling extent alleged. (Def.'s Br. 11.)

> In determining a claimant's RFC in the fourth step of the disability analysis,
>
> [T]he adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

SSR 96-8p. In the present case, the record is thoroughly developed as to Plaintiff's subjective symptoms. The ALJ extensively questioned the Plaintiff about her medical history and subjective symptoms at the hearing. (R. 264-88.) The ALJ's opinion describes his considerations in evaluating the Plaintiff's subjective complaints, and thoroughly notes the symptoms complained of by Plaintiff in her application and in her testimony. (R. 17-18.) Specifically, the ALJ's opinion

-10-

acknowledges consideration of the following reported symptoms: blurred/poor vision, shaky hands/trembling, fatigue, shortness of breath, bowel/urinary problems, cognitive limitations, irritability, anxiety with depression, pain affecting the joints, trouble sleeping, nightmares, paranoia, sensitivity to heat and cold, poor circulation of the legs, heart palpitations, frequent vomiting, difficulty walking, standing, sitting and lifting, trouble being alone, and back pain. (R. 18-19.) The ALJ explained that he did not find Plaintiff's testimony regarding her subjective symptoms entirely credible in light of other evidence, such as other aspects of Plaintiff's own testimony regarding her recent part-time work and Plaintiff's medical records. (R. 19.) This Court finds that the ALJ's account of Plaintiff's symptoms was sufficiently detailed to support his RFC finding, and that he properly considered Plaintiff's subjective symptoms in light of the medical evidence.

Plaintiff argues the ALJ's failure to list the "frequency, intensity and duration" of each of these reported symptoms in his findings was legal error in that it did not follow the policy interpretation regarding assessing RFC set forth in SSR 96-8p and Burnett v. Commissioner of Social Sec. Admin, 220 F.3d 112 (3d Cir. 2000) (finding an ALJ's failure to discuss some contradictory evidence in making an RFC determination was reversible error). (Pl.'s Br. 22.) However, SSR 96-8p requires the ALJ to consider all relevant evidence in the case record and specifically address the claimant's remaining exertional and nonexertional capacities. Here, the ALJ met this requirement by finding, in light of Plaintiff's testimony and specific medical reports, that Plaintiff could lift up to ten pounds, walk and stand occasionally, and sit for up to six hours per day. Therefore, this Court finds the ALJ's finding regarding Plaintiff's RFC is consistent with the policy of SSR 96-8p. Cf. Salles v. Commissioner of Social Sec., 229 F. App'x 140, 148 (3d

Cir. 2007) ("A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC.").

### iv. The ALJ's RFC and PRW Analyses

Plaintiff argues the ALJ committed legal error by not making particular findings as to the actual demands of Plaintiff's past jobs or the demands of such work as performed in the national economy. (Pl.'s Br. 21.) The Commissioner counters that the ALJ properly found that Plaintiff did not meet her burden of proving that she did not retain the RFC to perform her PRW as an office clerk. (Def.'s Br. 14.)

A determination that an individual has the capacity to perform past relevant work must include specific findings of fact "as to the physical and mental demands of the past job/occupation." SSR 82-62. Here, the ALJ's opinion cites the vocational expert's testimony as to the physical and mental demands of Plaintiff's past work. (R. 18-19.) Plaintiff testified as to the specific requirements of her past work as an assembler, clerk, and WIC expediter. (R. 260-63.) The ALJ noted that Plaintiff's work assembling aircraft was classified as "medium and semi-skilled," that her work as a case aide was "light and semi-skilled," and that her work as a clerk was "sedentary and semi-skilled" based on the vocational expert's testimony. The ALJ determined that Plaintiff retained the RFC to perform sedentary work and that she could return to her past work as a clerk, which was "sedentary and semi-skilled in nature, as generally performed for employers in the national economy." (R. 19, citing Dictionary of Occupational Titles §§ 203.582-054, 205.362-018; SSR 82-61.) This Court finds that the ALJ's findings regarding the physical and mental demands of Plaintiff's past work are substantially supported by the record and were sufficiently explained in the ALJ's opinion.

-12-

### 3. The ALJ Was Not Required to Reach the Fifth Step

Given that this Court finds the ALJ's opinion that Plaintiff's RFC allowed her to perform her PRW is substantially supported by the record, the burden never shifted to the Commissioner to prove that Plaintiff could perform other work available in sufficient numbers in the national economy. See Ramirez v. Barnhart, 372 F.3d 546, 551 (3d Cir. 2004) ("*If* the claimant survives step four, the fifth step requires the SSA to . . . determine whether the claimant is capable of performing other jobs . . . .") (emphasis added).

### CONCLUSION

The ALJ's determination that Plaintiff was not disabled under the Social Security Act meets the substantial evidence threshold. Therefore, the Court affirms the Commissioner's decision.

For the foregoing reasons, and for good cause shown,

IT IS on this 27th day of February, 2009

ORDERED that the decision of the Commissioner is AFFIRMED.

                                                    s/ Anne E. Thompson
                                                    ANNE E. THOMPSON, U.S.D.J.